UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| MARISA WERNER, | ) | |
|---|---|---|
| | ) | Case No. 1:20-cv-252 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Susan K. Lee |
| TAMMY C. YOUNG, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

# MEMORANDUM OPINION

Before the Court is a partial motion to dismiss filed by Defendants Tammy C. Young, Robert C. Young ("Chris Young[1]"), and Sequatchie Valley Preparatory Academy (the "Academy") (Doc. 25). Defendant Bryce Young filed a notice of bankruptcy (Doc. 14). For the following reasons, the motion will be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND[2]

The Academy is a private, Christian boarding school in Dunlap, Tennessee. (Doc. 20, at 2, 4–5.) It enrolls only twelve students per year to enable hands-on learning, international travel, and a family-ranch lifestyle in a socially and politically conservative environment. (*Id.* at 4–5.) The Academy offers a pre-veterinary preparatory program ("pre-vet"), which includes pre-vet projects under the supervision of specific pre-vet teachers. (*Id.* at 5–6.) Its advertising materials

---

[1] The amended complaint and the parties generally refer to this Defendant as "Chris Young" despite being identified as "Robert Young" in the case caption. (*See generally* Doc. 20.) The Court follows suit and uses the name "Chris Young" in this opinion.

[2] The following facts are drawn from Plaintiff's amended complaint and presumed true unless otherwise noted. Some of the alleged facts are actually legal conclusions and will be addressed in the analysis section below.

promote its individualized approach, "close, family[-]style relationships" between students and faculty members, and safe, nurturing environment. (*Id.*)

Defendants Tammy Young and Chris Young own and operate the Academy. (*Id.* at 7.) Their son, Defendant Bryce Young, was employed by the Academy as a pre-vet teacher. (*Id.*) He was responsible for teaching and supervising pre-vet students and projects from fifth to twelfth grade. (*Id.*) His wife, Natalie Young, was also a pre-vet teacher. (*Id.*)

Plaintiff Marisa Werner began attending equestrian camps at the Academy when she was eight years old. (*Id.* at 8.) In 2014, she enrolled as a seventh-grader at the Academy on a partial scholarship. (*Id.*) Werner, an aspiring veterinarian, lived at the school for nine months per year and participated in its pre-vet program. (*Id.*)

In or around January 2017, Werner and the Academy's other pre-vet students attended a school trip to Honduras. (*Id.*) During the trip, Defendant Bryce Young, then twenty-two years old, began "engaging in escalating physical contact" with Werner, then fifteen years old. (*Id.*) In particular, he began "grooming" her by "engag[ing] in prolonged, inappropriate hugging" with her "[i]n the evenings before bed." (*Id.* (quotation marks omitted).) Defendant Bryce Young intended to "condition[] Ms. Werner to place her trust in him" through this practice. (*Id.*)

In or around September 2017, Werner and the other pre-vet students attended a school trip to Washington, D.C. (*Id.* at 9.) During a shuttle-bus tour, Defendant Bryce Young and Werner sat together. (*Id.*) "[W]hile no one else was watching," Defendant Bryce Young "slid his hand up Ms. Werner's pant leg and began touching and penetrating her vagina with his fingers." (*Id.*) He "directed Ms. Werner to massage [his] penis through his clothing[,] and she complied." (*Id.*)

In December 2017, Defendant Bryce Young "was permitted to drive Ms. Werner and another pre-vet student alone in his car off-campus." (*Id.*) "While the other pre-vet student was asleep in the back," Defendant Bryce Young "again slid his hand up Ms. Werner's pant leg and began touching and penetrating her vagina." (*Id.*) According to Werner, prior to this event, Defendants Tammy Young and Chris Young "either knew or had reasonable cause to suspect that child sexual abuse had occurred due to the frequency of occasions, and the amount of time, [Defendant Bryce] Young was alone with Ms. Werner, as well as [his] prolonged, 'inappropriate hugging' with Ms. Werner." (*Id.* at 9–10.)

On or around June 11, 2018, Natalie Young discovered "inappropriate text messages" between Defendant Bryce Young and Werner on his phone. (*Id.* at 10.) "Upon discovering these messages, Natalie Young disclosed" her discovery to Defendants Tammy Young and Chris Young. (*Id.*)

Defendant Tammy Young subsequently "pulled Ms. Werner away from the other pre-vet students and placed her into a room with the door closed." (*Id.*) She "proceeded to interrogate Ms. Werner for approximately one hour," during which Werner "did not believe she could voluntarily leave the room." (*Id.*) Later that night and after the questioning, Defendant Tammy Young called Werner's mother, Susan Werner, and "informed her that Tammy's husband, Chris Young, discovered a sexual relationship between Defendant [Bryce] Young and Ms. Werner." (*Id.*) Defendant Tammy Young then "forced Ms. Werner to quickly pack some of her clothes in a bag" and drove her "to a shuttle bus station to send her" home, while most of Werner's possessions remained at the Academy. (*Id.*)

At no point did the Academy or its staff report these "instances of abuse despite knowledge of these overt actions and despite having a statutory duty to report childhood sexual

3

abuse under Tennessee law." (*Id.* at 11.) The Academy's stated mission and approach to learning "conditioned and otherwise encouraged" Werner to trust Defendant Bryce Young. (*Id.*) The Academy "encouraged and facilitated [Defendant Bryce Young's] sexual abuse" by "allowing [him] to serve as a chaperone and teacher" on "overnight trips" and by "otherwise permitting [him] to openly touch and inappropriately dote on Ms. Werner in public." (*Id.* at 11–12.) In sum, Werner alleges that the Academy "knew or should have known" that Defendant Bryce Young "was a child molester," but "continue[s] to profit" because it "shame[d] and punish[ed]" Werner instead of halting his abuse. (*Id.* at 12.) Defendant Bryce Young "remains a threat to other [] students" because he has not been removed from employment at the Academy. (*Id.* at 12–14.)

Werner filed this lawsuit in August 2020. (*See* Doc. 1.) Her amended complaint (the "complaint") asserts claims for:

I. False imprisonment against Tammy Young;

II. Negligence per se against Bryce Young;

III. Negligence per se against the Academy, Tammy Young, and Chris Young;

IV. Negligence against the Academy, Tammy Young, and Chris Young;

V. Negligent retention against the Academy, Tammy Young, and Chris Young;

VI. Respondeat superior and/or vicarious liability against all Defendants[3];

VII. Breach of fiduciary duty against all Defendants;

VIII. Childhood sexual abuse against Bryce Young and the Academy;

---

[3] The wording of complaint, however, makes clear that Plaintiff intends to allege that the Academy is vicariously liable for the actions of its employees and agents, the individual Defendants, not that the individual Defendants are vicariously liable for the actions of one another. (*See* Doc. 20, at 21.)

IX.     Assault against Bryce Young;

X.      Battery against Bryce Young;

XI.     Intentional infliction of emotional distress ("IIED") against Bryce Young; and

XII.    Punitive damages against all Defendants.

(Doc. 20, at 15–29.)  Defendant Bryce Young, through counsel, notified the Court in September 2020 that he had filed for bankruptcy.  (Doc. 14.)  The Court takes notice of the record in Defendant Bryce Young's case before the U.S. Bankruptcy Court for the Eastern District of Tennessee, which suggests that his bankruptcy matter was closed on January 28, 2021.  The Academy, Tammy Young, and Chris Young have moved for dismissal of Counts III, IV, V, VI, VII, VIII, and XII of the amended complaint.  (Doc. 25.)  Werner has responded (Doc. 33), and the motion is ready for adjudication.

## II.    STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 8, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6).  On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct."  *Id*. at 679.  For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all

5
Case 1:20-cv-00252-TRM-SKL   Document 42   Filed 02/04/21   Page 5 of 14   PageID #: 223

well-pleaded factual allegations in the complaint. *Thurman*, 484 F.3d at 859. This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

#### A. Count III: Negligence Per Se Against Tammy Young, Chris Young, and the Academy

"Liability under the negligence per se doctrine can arise when a party fails to perform a duty imposed by statute or ordinance." *Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 734 (Tenn. 2019) (italics removed) (citing *Little v. Nashville, Chattanooga & St. Louis Ry. Co.*, 281 S.W.2d 284, 292 (Tenn. Ct. App. 1954)). Negligence per se requires the plaintiff to establish the following:

> First, the defendant must have violated a statute or ordinance that imposes a duty or prohibition for the benefit of a person or the public. Second, the injured party must be within the class of persons intended to benefit from or be protected by the

statute. Finally, the injured party must show that the negligence was the proximate cause of the injury.

*Id.* (block quoting *Harden v. Danek Med., Inc.*, 985 S.W.2d 449, 452 (Tenn. Ct. App. 1998)).

Proximate cause is assessed with a three-pronged test:

(1) the tortfeasor's conduct must have been a substantial factor in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Hale v. Ostrow*, 166 S.W.3d 713, 719 (Tenn. 2005) (quotation marks and citation omitted).

While establishing negligence per se "renders the conduct negligent as a matter of law," the doctrine is not a "transformational formula that automatically creates a private negligence cause of action for the violation of every statute." *Shaw*, 596 S.W.3d at 734 (internal quotation marks and citation omitted). Thus, in addition to the elements above, courts also consider:

(1) whether the statute is the sole source of the defendant's duty to the plaintiff, (2) whether the statute clearly defines the prohibited or required conduct, (3) whether the statute would impose liability without fault, (4) whether invoking the negligence per se doctrine would result in damage awards disproportionate to the statutory violation, and (5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute.

*Id.* (citation omitted).

Werner alleges that Defendants Tammy Young, Chris Young, and the Academy "had a duty, pursuant to [Tenn. Code Ann.] §§ 37-1-602(b), 37-1-605(a)(4), 37-1-605(b)(3), and 37-1-615(a), to report known or suspected instances of child sexual abuse and/or institutional child sexual abuse." (Doc. 20, at 16.) Indeed, if a "[s]chool teacher or other school official or personnel . . . knows or has reasonable cause to suspect that a child has been sexually abused," that person "shall report such knowledge or suspicion to" the authorities. Tenn. Code Ann. § 37-

1-605(a).  "Any person required to report known or suspected child sexual abuse who knowingly fails to do so, or who knowingly prevents another from doing so" for the first time commits "a Class A misdemeanor."  *Id.* § 37-1-615(a).

Even assuming that the reporting statute created a duty, that Defendants Tammy Young, Chris Young, and the Academy breached that duty, and that a breach of the reporting statute amounts to negligence per se, Werner has not pleaded facts showing that Defendants' breach caused an injury.  In a section entitled "Discovery of Abuse," the complaint alleges that Natalie Young discovered inappropriate text messages on Defendant Bryce Young's phone around June 11, 2018, and subsequently "disclosed this to Defendants Tammy and Chris Young," leading promptly to Werner's expulsion.  (Doc. 20, at 10.)  Critically, however, Werner does not allege facts showing that any Defendant other than Bryce Young (who is not named in this negligence per se claim) knew about, and then knowingly failed to report, abuse against Werner prior to its last alleged occurrence in December 2017.  (*See generally id.* at 4–13.)  It is axiomatic that the breach of a statutory duty cannot cause an injury that temporally preceded it.  *Cf. Hale*, 166 S.W.3d at 719 (noting that proximate cause requires that the breach must have been a substantial factor "in bringing about the harm being complained of").

Werner points to the alleged hugging and grooming during the January 2017 Honduras trip and to her allegation that:

> Prior to the last instance of [Bryce] Young sexually abusing Ms. Werner, Tammy and Chris Young either knew or had *reasonable cause to suspect* that child sexual abuse had occurred due to the frequency of occasions, and the amount of time, Young was alone with Ms. Werner, as well as Young's prolonged, "inappropriate hugging" with Ms. Werner.

(*Id.* at 9–10 (emphasis added).)  But the mere occurrence of inappropriate hugging does not establish that others knew of or reasonably should have suspected the hugging, nor that they knew of or reasonably should have suspected abuse that followed months later.  While Werner

alleges in conclusory fashion that other Defendants "had reasonable cause to suspect that child sexual abuse had occurred" prior to December 2017, the complaint's fact section barely mentions Tammy Young and Chris Young prior to June 2018. (*See, e.g.*, *id.* at 9 (alleging that during the Washington, D.C. trip in September 2017, Bryce Young abused Werner "while no one else was watching").) The allegation that Defendants Tammy Young and Chris Young "had reasonable cause to suspect" child abuse, then, is a legal conclusion couched as a factual allegation. *See Papasan*, 478 U.S. at 286 (explaining that courts do not "accept as true a legal conclusion couched as a factual allegation"). Indeed, the facts alleged do not plausibly show that anyone— other than Defendant Bryce Young and Plaintiff Marisa Werner—had "reasonable cause" to suspect wrongdoing prior to Natalie Young's discovery of the inappropriate texts on Bryce Young's phone in June 2018. Werner's vague allusions to "alone time" between her and Bryce Young in the context of a small school do not alter this conclusion. *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))).

Even if Defendants Tammy Young, Chris Young, and the Academy breached a duty to report child sexual abuse, Werner's factual allegations do not plausibly show that a breach caused her injury. *Cf. Doe v. Coffee Cnty. Bd. of Educ.*, 852 S.W.2d 899, 909 (Tenn. Ct. App. 1992) (dismissing failure-to-report claim for "failure to establish a causal connection" where school official "did not receive the complaints" about a teacher's abuse "until after the incidents . . . had already occurred"). Accordingly, Werner's third cause of action will be **DISMISSED**.

9
Case 1:20-cv-00252-TRM-SKL   Document 42   Filed 02/04/21   Page 9 of 14   PageID #: 227

### B. Counts IV and V[4]: Negligence and Negligent Retention Against Tammy Young, Chris Young, and the Academy

The torts of "negligent hiring, supervision, and retention all involve essentially the same questions: did the defendant have notice of the wrongdoer's propensity to commit sexual misconduct, authority to prevent the harm, and some duty of care to those who were harm?" *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 454 (Tenn. 2012) (internal quotation marks and citation omitted). Thus, a "plaintiff in Tennessee may recover for negligent hiring, supervision or retention of an employee if [s]he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008).

> To prevail on a negligence claim, a plaintiff must establish (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause.

*Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008) (citation omitted).

Werner has not pleaded facts showing that Defendants Tammy Young, Chris Young, or the Academy "had knowledge of [Bryce Young's] unfitness for the job." *Catholic Bishop for the Diocese of Memphis*, 306 S.W.3d at 717. As discussed above, Werner has not alleged facts plausibly showing that anyone other than she and Defendant Bryce Young knew of or had reason to suspect child abuse prior to Natalie Young's discovery of the inappropriate text messages in June 2018. By extension, Werner has pleaded no facts suggesting that Defendants Tammy Young, Chris Young, or the Academy had any reason to believe that Bryce Young was unfit for

---

[4] The parties' briefs analyze these causes of action together. The Court follows suit.

his job, notwithstanding whether he actually was unfit. Accordingly, Werner's fourth and fifth causes of action will be **DISMISSED**.

### C. Count VI: Respondeat Superior and/or Vicarious Liability Against All Defendants[5]

Under the doctrine of respondeat superior, "an employer may be held liable for the torts committed by his or her employees while performing duties within the scope of employment." *White v. Revco Discount Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000) (citation omitted). The plaintiff must therefore "prove that the employee was acting within the course and scope of his [or her] employment when the injury occurred." *Catholic Bishop Diocese of Memphis*, 306 S.W.3d at 729 (citation omitted). "The question of whether the employee was acting within the course and scope of his employment is 'ordinarily one of fact for the determination of the jury, except where the departure from the [employer's] business is of marked and decided character.'" *Id.* (emphasis removed) (quoting *Home Stores, Inc. v. Parker*, 166 S.W.2d 619, 622 (Tenn. 1942)).

The sexual abuse allegedly committed by Defendant Bryce Young is markedly and decidedly outside the scope of the Academy's business. *Cf. Jackson v. Burrell*, No. W2018-00057-COA-R3-CV, 2019 WL 237347, at *4–*5 (Tenn. Ct. App. Jan. 16, 2019) ("[W]e hold that it strains credulity to view a massage therapist's act of sexual assault to be within the scope of employment."), *rev'd on other grounds by* 602 S.W.3d 340 (Tenn. 2020). The application of respondeat superior for Defendant Bryce Young's abuse would therefore be inappropriate. Accordingly, Werner's sixth cause of action will be **DISMISSED**.

---

[5] As noted above, the allegations underlying this cause of action are aimed at affixing vicarious liability to the Academy for the actions of its employees, not affixing liability to the employees for the actions of one another.

### D. Count VII: Breach of Fiduciary Duty Against All Defendants

A "fiduciary relationship arises when one person reposes special trust and confidence in another person and that other person—the fiduciary—undertakes to assume responsibility for the affairs of the other party." *Morrison v. Allen*, 338 S.W.3d 417, 437–38 (Tenn. 2011) (citations omitted). The "person upon whom the trust and confidence is imposed is under a duty to act for and to give advice for the benefit of the other person on matters within the scope of the relationship." *Id.* (citations omitted). "Proof of damages is an essential element of a fiduciary duty claim, . . . as is causation of damages." *Id.* (citations and internal quotation marks omitted).

Werner cites no Tennessee cases concluding that private schools and their employees owe a fiduciary (as to opposed to ordinary) duty to the school's students. Even assuming such a relationship existed, however, Werner has not pleaded facts which plausibly show that Defendants Tammy Young, Chris Young, or the Academy breached the duty in a way that caused her damages. As discussed above, none of the alleged facts show that the other Defendants knew of or had reasonable cause to suspect Defendant Bryce Young's actions prior to the last incident of abuse, meaning that their actions or inactions could not have actually or foreseeably caused abuse. *Cf. Hale*, 166 S.W.3d at 719. Accordingly, Werner's seventh cause of action will be **DISMISSED**.

### E. Count VIII: Childhood Sexual Abuse Against Bryce Young and the Academy

While Werner identifies a definitional provision in the mandatory-reporting statute regarding child sexual abuse, she identifies neither a statutory nor a common law civil cause of action for "childhood sexual abuse." The allegations suggest that this count is essentially intended to capture a common-law sexual-battery claim, however, and the Court construes it as

12
Case 1:20-cv-00252-TRM-SKL   Document 42   Filed 02/04/21   Page 12 of 14   PageID #: 230

such.[6] To the extent Werner presses the claim against the Academy—which, as an entity, cannot literally commit a battery—it must hinge on a tort committed by the Academy's employee or agent and vicariously attributable to the Academy. In this sense, the "childhood sexual abuse" claim against the Academy is not distinguishable from the respondeat-superior claim discussed above. For the reasons set forth above, Werner's eighth cause of action against the Academy will be **DISMISSED**.

### F. Count XII: Punitive Damages Against All Defendants

Punitive damages may "only be awarded if the claimant proves by clear and convincing evidence that the defendant against whom punitive damages are sought acted maliciously, intentionally, fraudulently or recklessly[.]" Tenn. Code Ann. § 29-39-104(a).

All of Werner's substantive claims against the Academy and Chris Young will be dismissed, meaning the claim for punitive damages against them must also be **DISMISSED**. The only remaining claim against Defendant Tammy Young is for false imprisonment. While Defendant Tammy Young correctly argues that punitive-damages claims can be dismissed before trial, Werner's false-imprisonment allegations could be reasonably understood to entail malicious, intentional, fraudulent, or reckless conduct on Defendant Tammy Young's part. Dismissal of the punitive-damages claim against Defendant Tammy Young would therefore be inappropriate at this stage.

---

[6] This construal does not fit perfectly with Count X, which is a battery claim against Defendant Bryce Young. Defendants' opening brief identified this issue, but Plaintiff's response brief did not resolve it. She cites Tennessee Code Annotated § 28-3-116, which creates a statute-of-limitations regime for actions "*based* on child sexual abuse" as defined in the reporting statute. *See* Tenn. Code Ann. § 28-3-116(b) (emphasis added). While § 28-3-116 controls the limitations period for the claims at issue here, it does not create new causes of action for Plaintiff to bring.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss (Doc. 25) is **GRANTED IN PART** and **DENIED IN PART**:

1. Counts III, IV, V, and VI are **DISMISSED**;
2. Count VII is **DISMISSED** as to the Academy, Tammy Young, and Chris Young;
3. Count VIII is **DISMISSED** as to the Academy; and
4. Count XII is **DISMISSED** as to the Academy and Chris Young.

The Clerk is **DIRECTED** to terminate Defendants Sequatchie Valley Preparatory Academy and Robert C. Young. Werner is also **ORDERED** to file a status report regarding Defendant Bryce Young's bankruptcy proceeding **on or before February 26, 2021**, apprising the Court of whether her claims against him can now proceed.

**SO ORDERED.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**